UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID MARSH,

            Plaintiff,            Civil Action No. 21-12476

v.                                    Shalina D. Kumar
                                    United States District Judge

DR. COLEMAN, *et al.*          David R. Grand
                                    United States Magistrate Judge

            Defendants.
_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANT RICKEY COLEMAN, D.O.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 29)

*Pro se* plaintiff David Marsh ("Marsh"), an incarcerated person, brings this civil rights action pursuant to 42 U.S.C. § 1983, against defendants Rickey Coleman, D.O., ("Coleman") and Susan McCauley ("McCauley") based on their alleged failure to provide him adequate medical treatment during his incarceration at the Saginaw Correctional Facility ("SRF"), in violation of the Eighth and Fourteenth Amendment. (ECF No. 1). The case was referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636(b). (ECF No. 16).

On May 13, 2022, defendant Coleman filed a Motion for Summary Judgment Based Solely on the Failure to Exhaust Administrative Remedies. (ECF No. 29). Marsh filed a response to this motion on May 20, 2022, and Coleman filed a reply on June 9, 2022. (ECF Nos. 33, 34).

Generally, the Court will not hold a hearing on a motion in a civil case in which a

party is in custody. *See* E.D. Mich. LR 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

I.  RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Coleman's Motion for Summary Judgment **(ECF No. 29)** be **DENIED**.

II. REPORT

    A.  Background

        i. The Underlying Incidents

Marsh, a MDOC prisoner who is currently still confined at SRT, brings this § 1983 civil rights action based on alleged violations of his Eighth and Fourteenth Amendment rights. (ECF No. 1, PageID.4). In his complaint, Marsh alleges that he is "an honorably discharged disabled Veteran" who has been incarcerated for the "past 42 years." (ECF No. 1, PageID.7). In September 2000, he had allegedly "fractured the Lisfranc bone of his left foot," which was "never reset or repaired," "healed poorly," and "over the next 16 years" became "deformed and arthritic." (*Id.*). In 2017, he was eventually evaluated at the MDOC's Duane Waters Hospital by a podiatrist, who "verified the arthritic deformity of his left foot, and prescribed orthopedic shoes with orthotic inserts." (*Id.*). Based on that prescription, he "received the prescribed shoes and custom inserts" in January 2018. (*Id.*).

Marsh alleges that, eventually in "late-2018" after "9 months of normal usage and wear," he requested "replacement shoes and inserts," but Coleman (the MDOC's Assistant Chief Medical Officer) and McCauley (a Housing Unit Manager) "denied this request and

instead "approved only generic athletic shoes (with no orthopedic or orthotic value) for [him] to wear." (*Id.*). As a result of their refusal to provide replacements for his prescribed shoes and inserts, Marsh allegedly suffered injuries to his left knee "[i]n the interim," including a "torn meniscus, torn ACL, osteochondritic [sic] fracture, and osteochondritis dessicans [sic]." (*Id.*).

Marsh's injuries eventually led to him requiring treatment in January 2019 from "MDOC-contracted Orthopedic Surgeon, Dr. Haverbush," who repaired his left knee, "restored it to 85% of previous capacity," and "wrote a two-page letter to all MDOC medical staff, including [the defendants], urging them to restore [Marsh's] orthopedic shoes and orthotic inserts, as a matter of medical necessity[.]" (*Id.*). Nevertheless, McCauley and Coleman "refused to re-issue" the prescribed shoes and inserts, confiscated his old, worn-out pair of prescribed shoes and inserts, and instead issued "generic athletic shoes," which caused him to "suffer[] chronic acute pain with every step he had to take, averaging 2500 steps/day as a minimum . . . ." (*Id.*). By May 27, 2021, his "right knee became disabled by a torn meniscus," he "was issued a wheelchair" after the use of crutches exacerbated his injuries, and he can "no longer take more than 25-30 steps at a time, and only with acute pain." (*Id.*).

Based on the above allegations, Marsh sues Coleman and McCauley for (1) being "deliberately indifferent to [his] serious medical needs" by "willfully, wantonly, and recklessly disregarding [his] serious medical needs for orthopedic shoes and orthotic inserts"; and (2) failing to provide him "with constitutionally mandated due process and equal protection of the laws requiring that incarcerated Veterans must be treated the same

3

as other Veterans." (*Id.*, PageID.15).¹ Marsh contends that, as a result of the actions they did or did not take, he sustained physical injuries in the form of "[c]ontinuing arthritic deformation of left foot," "[d]eterioration of surgically-repaired left knee," and "[r]ight knee disabled by torn meniscus," along with emotional and mental pain. (*Id.*, PageID.8). Marsh seeks money damages against defendants in their official and individual capacities, as well as declaratory and injunctive relief as "deem[ed] necessary and just." (*Id.*).

### ii. Issues with Marsh's Grievances

The sole issue in defendant Coleman's summary judgment motion is whether Marsh properly exhausted his grievances against Coleman related to the foregoing incidents at SRF. Relevant here are two specific grievances concerning the claims Marsh raises against Coleman in his complaint.² First, Marsh filed Grievance SRF-19-04-0432-12D3³ ("SRF-0432") against Coleman and McCauley "for canceling his accommodation for orthopedic

---

¹ Marsh also alleges that Coleman and McCauley "refused to provide [him] with fair and equal treatment as a Veteran, in that U.S. Dept. of Veterans Affairs regulation, VHA Directive 1601A.02(9)(d) [Incarcerated Veterans], provides for Health Care benefits if the incarcerating authority fails to provide health care to the incarcerated Veterans in question." (ECF No. 1, PageID.15).

² Because only defendant Coleman filed a summary judgment motion on the basis of exhaustion, the Court limits its focus to the salient grievance documents that include claims against Coleman. While Marsh references a third grievance, SRF-2018-12-1167-12E3, both his Step I grievance and his complaint make clear that such grievance only takes issue with Health Unit Manager McCauley, and thus has no bearing on the outcome of Coleman's instant motion. (*See* ECF No. 1, PageID.16 ("SRF 2018/12/1167/12E3 filed against Health Unit Manager [] McCauley [who] wrongfully determined that [Marsh] did not have a valid podiatrist's prescription for orthopedic shoes and orthotic inserts."); ECF No. 33, PageID.163 ("This grievance is against SRF HUM S.B. McCauley.")).

³ MDOC records reflect that, at Step III, "[t]he grievance tracking number has been changed from SRF-19-04-0432-12D3 to SRF-19-04-0432-28e in order to reflect the grievance category code at Step III." (ECF No. 29-1, PageID.120).

4

shoes and orthotic inserts without any examination, and contrary to the prescription of Dr. Mathew Page [] and Orthopedic Surgeon Dr. [] Haverbush, both of who did physically examine [Marsh]." (ECF No. 1, PageID.16). Marsh alleges that SRF-0432 "was denied on the merits at Steps I and II, but rejected as 'untimely' at Step III." (*Id.*). He alleges, however, that "the Step II box labeled 'Dated [sic] Returned to Grievant:' is blank," and that he "timely mailed [SRF-0432] to Step III on the same day that he actually received the Step II response" and "has no control over delivery of MDOC grievance responses." (*Id.*).

Second, Marsh filed Grievance SRF-21-08-0970-12D1[4] ("SRF-0970") against Coleman and McCauley "for deliberately ignoring the recommendations of two specialists, thus resulting in the May 27, 2021 injury [alleged in his complaint]." (*Id.*, PageID.16). He alleges that he pursued SRF-0970 through all three steps of the grievance process. (*Id.*).

Defendant Coleman now moves for summary judgment on Marsh's claims against him, arguing that Marsh failed to properly exhaust his administrative remedies before filing the instant lawsuit.

**B.     Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir.

---

[4] MDOC records reflect that, at Step III, "[t]he grievance tracking number has been changed from SRF-21-08-0970-12D1 to SRF-21-08-0970-28i in order to reflect the grievance category code at Step III." (ECF No. 29-1, PageID.115).

5

2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**C. Analysis**

In his motion, defendant Coleman argues that summary judgment is warranted on Marsh's claims against him because Marsh's grievances in SRF-0432 and SRF-0970 were

not properly exhausted. (ECF No. 29, PageID.107).[5] Specifically, Coleman contends it is undisputed that Marsh failed to fully exhaust either of these two grievances through the MDOC's three-step process because, at Step III, SRF-0432 was rejected as untimely and SRF-0970 was rejected for failure to attempt to resolve the matter prior to filing the grievance. For the reasons discussed below, the Court disagrees that Coleman is entitled to summary judgment on these arguments.

### *The PLRA's Exhaustion Requirement*

Under the PLRA, a prisoner may not bring an action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See id.* at 216; *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019).

---

[5] To the extent Coleman's supporting brief refers to a "Defendant Scott Holmes, M.D.," it appears to be a scrivener's error. (*See, e.g.*, ECF No. 29, PageID.101, 108).

### *The MDOC's Exhaustion Procedures*

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF No. 29-2, PageID.130). A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ C).

The Policy provides that, "[p]rior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days [], unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs." (*Id.* at ¶¶ J, Q). If a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id.* at ¶¶ Q, W). If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id.* at ¶ DD). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id.* at ¶ HH). Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps. (*Id.* at ¶ C).

*Coleman Fails to Show the Absence of a Material Question of Fact as to Whether Marsh Timely Appealed SRF-0432 to Step III*

In his motion, Coleman argues that SRF-0432 was "rejected at Step III for being untimely" because his "Step III appeal was due on June 19, 2019 and received on July 1, 2019." (ECF No. 29, PageID.109). To support his argument, Coleman relies on ¶ HH of the Policy, which states that "[t]o file a Step III grievance, the grievant must **send** a completed Prisoner/Parolee Grievance Appeal form (CSJ-247B) to the Grievance section **within ten business days after receiving the Step II response** . . ." (ECF No. 29-2, PageID.136) (emphasis added).

In response to Coleman's motion, Marsh argues that he "clearly" alleged in his complaint that "the box marked 'Date Returned to Grievant:' [in the Step II response] is **blank**," and that he "timely mailed the same to Step III on **the same day** that he actually received the Step II response" but "has no control over the delivery of MDOC grievance responses." (ECF No. 33, PageID.158-59) (emphasis added). In his reply brief, Coleman does not address Marsh's arguments.

Because Coleman bears the burden of proving non-exhaustion, he must show that there is no material question of fact as to whether Marsh failed to timely mail his Step III appeal within ten days of receiving his Step II response. Coleman failed to meet his burden.

To start, a review of the salient grievance documents concerning SRF-0432 reflects that, at Step I, Marsh raised a grievance "against MDOC ACMO Dr. Coleman" because "Dr. Coleman, ACMO, cancelled [his] accommodation" for "orthotics and New Balance shoes," which was prescribed by the podiatrist at Duane Waters Hospital to address

9

Marsh's "poorly healed Lisfranc fracture of the left foot." (ECF No. 29-1, PageID.123). SRF-0432 was received at Step I on April 29, 2019, denied on "5-14-19," and a Step I response was returned to Marsh on May 15, 2019. (ECF No. 29-1, PageID.123 ("Date Returned to Grievant: 5/15")).

Marsh then filed a Step II appeal on "5-17-19," and it was received by the Step II Respondent on May 28, 2019. (*Id.*, PageID.121 ("Date Received by Step II Respondent: May 28 2019")). Notably, although the bottom of the Step II response itself is dated June 5, 2019, the section of the Prisoner/Parolee Grievance Appeal Form designated to document the "Date Returned to Grievant" at Step II was left blank. (*Id.*, PageID.121). Moreover, the same form reflects that Marsh appealed to Step III, but there is no indication as to the exact date on which the Step III appeal was sent. (*Id.*). What is clear is that the Step III appeal was stamped as "RECEIVED" by the MDOC's Office of Legal Affairs on "Jul 01 2019." (*Id.*). Ultimately, SRF-0432 was rejected at Step III as follows:

> In accordance to PD 03.02.130 grievances are to be rejected when untimely. Pursuant to policy, this grievance was untimely filed by the grievant at the Step III appeal. ***The grievant's Step III appeal was received on July 1, 2019***. While providing a grace period for standard mail; the grievance however ***was still not received in a suitable timeframe after the due date of June 20, 2019***. . . . Grievance rejected.

(*Id.*, PageID.120) (emphasis added).

Based on the above evidence, material factual questions exist as to (1) the date Marsh received the Step II response; and (2) the date he mailed his Step III appeal. Such dates are material to this case because ¶ HH of the Policy merely requires that Marsh "***send***" his completed Step III appeal "within ten business days ***after receiving the Step II***

10

*response*." (ECF No. 29-2, PageID.136). In other words, to prove that Marsh failed to timely "send' his Step III appeal "within ten business days after receiving the Step II response," Coleman must first establish the actual date Marsh received the Step II response, and then show that Marsh failed to send his Step III appeal within ten days of receipt. Coleman, who bears the burden of proving non-exhaustion, does not even offer his own position as to the date Marsh received the Step II response, much less present evidence that Marsh failed to send his Step III appeal within ten days.

Instead, to the extent Coleman merely relies on the fact that the Step III response states a "due date of June 20, 2019" for a Step III appeal, there is no way verify on this current record whether such due date was properly calculated, given that prison officials left blank the section on the Prisoner/Parolee Grievance Appeal Form that was specifically meant to document the date on which the Step II response was returned to Marsh. Moreover, to the extent the Step III response states that the appeal was not *received* until "July 1, 2019," ¶ HH of the Policy only requires Marsh to "*send*" his Step III appeal within ten business days, and there is no indication whatsoever on any salient grievance documents as to the date on which Marsh actually *sent* his Step III appeal. Indeed, Coleman has not shown that a delay in the delivery of the mail, or a failure from the MDOC's Office of Legal Affairs to timely log the Step III appeal upon receipt, could not have been the reason for Marsh's Step III appeal being stamped as received on July 1, 2019 and not earlier.

In short, it is *Coleman's* burden to prove non-exhaustion, and viewing the record in the light most favorable to Marsh, Coleman failed to show the absence of a material

11

question of fact as to whether the Step III appeal for SRF-0432 was *properly* rejected as untimely under ¶ HH of the Policy. Indeed, Coleman did not even surpass the first hurdle of identifying record evidence establishing the date Marsh received the Step II response which would have triggered his obligation to timely submit a Step III appeal. *See Celotex*, 477 U.S. at 325; *Alexander*, 576 F.3d at 558.

In sum, because factual questions exist as to certain dates that are material to the timeliness determination, Coleman is not entitled to summary judgment on the basis of exhaustion for claims raised in SRF-0432.

### *Prison Officials Waived Any Reliance on an Alleged Procedural Defect for Failure to Attempt to Resolve the Grievance with Staff Before Filing SRF-0970*

Next, Coleman argues that SRF-0970 was procedurally defaulted because it "was rejected at Step III due to [Marsh's] failure to attempt to resolve the issue with staff." (ECF No. 29, PageID.110). In support of this argument, Coleman points to ¶ Q of the Policy, which states, "[p]rior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control . . . If the issue is not resolved, the grievant may file a Step I grievance." (ECF No. 29-2, PageID.133).

A review of the salient grievance documents for SRF-0970 reflect that, at Step I, Marsh grieved that McCauley and Coleman "have been, and continue to be, deliberately indifferent to [his] serious medical needs" of requiring "orthopedic shoes with orthotic inserts, and DOUBLE knee replacement surgery," which caused him to tear the meniscus

12

in his right knee and exacerbate pre-existing injuries. (ECF No. 29-1, PageID.118). It also states that, prior to writing the grievance, Marsh made "[s]everal" attempts to resolve the issue, that he was eventually "seen by Dr. Oliver," who "requested MRI and provided a wheelchair," but that he still needs "corrective action ASAP." (*Id.*). SRF-0970 was "denied" on the merits at Step I after determining that "[t]here is no evidence that [McCauley] and [Coleman] have been deliberately indifferent or breached their constitutional duties as suggested in this grievance." (ECF No. 29-1, PageID.119).[6]

Marsh then appealed SRF-0970 to Step II, arguing that McCauley and Coleman "deliberately ignored the recommendations of two specialists without any examinations," which was the "very definition of deliberate indifference to my serious medical needs." (*Id.*, PageID.116). Again, the denial was affirmed on the merits at Step II as follows:

> Grievant's claim is not supported. He has been evaluated and treated as deemed appropriate based on his past medical history and current clinical presentation. While grievant's disagreement with the plan of care is noted, such disagreement does not inherently support his claim. Grievant is encouraged to discuss his symptoms and concerns with the provider at his scheduled visits, to follow the plan of care as instructed, and to promptly notify Health Care if he experiences acute adverse symptoms in [the] future and/or if he has any further concerns re: chronic symptoms or issues. . . . Grievance denied.

(*Id.*, PageID.117).

---

[6] Specifically, the "Investigation Summary" state that, while a recommendation for orthotics was sent for approval to Coleman on December 10, 2018, the request was deferred and Marsh was instead approved for athletic shoes, which he had consistently been provided since that time. (ECF No. 29-1, PageID.119). It further states that, while Marsh presented with a right knee injury in May 2021, "[t]here is no documentation to suggest the injury was related to his shoes or lack of orthotics," Marsh was "evaluated, and a complete diagnostic work up was initiated," he "has been provided with pain control, ambulatory assistance, diagnostic testing including x-rays and an MRI," and "an orthopedic consult has been approved and is pending scheduling." (*Id.*).

After an appeal to Step III, the Step III response states – *for the first time* – that "[i]n accordance with PD 03.02.130, this grievance is rejected as failed to attempt to resolve issue with staff.  Per the Electronic Medical Record, a written attempt to resolve this issue through a Health Care Request (CHJ-549)/Prisoner Kite for medical services was not found in the EMR." (*Id.*, PageID.115).  The Step III response also states that "[t]he grievance tracking number has changed from SRF-21-08-0970-12D1 to SRF-08-0970-28i in order to reflect the grievance category code at Step III.  Grievance rejected." (*Id.*).

In response to Coleman's motion, Marsh argues that, according to caselaw, Coleman waived any alleged procedural default because "the MERITS of [his] grievance were addressed at both Step I and Step II," and "[i]t was only at Step III that the MDOC claimed a procedural default was cause to reject this grievance." (ECF No. 33, PageID.160).[7]  Coleman does not dispute any of that, and instead, argues that Marsh

---

[7] Marsh also argues that he complied with ¶ Q of the Policy "when he was examined by Dr. Oliver" and that "[i]t would be absurd in the extreme to hold that a prisoner can discuss medical issues with his physician during an examination, but in order to file a grievance must then file a Health Care Request [] in order to discuss the very same issues that he ORALLY raised with his physician in a previous visit." (ECF No. 33, PageID.160).  This Court need not address this argument because, as discussed below, Coleman waived reliance on any alleged procedural defect. Nonetheless, it is worth noting that when reading the evidence and drawing all reasonable inferences in the light most favorable to Marsh, his Step I grievance indicates that he made "several" attempts to resolve the issue with healthcare staff and was ultimately seen by "Dr. Oliver" regarding his complaints in SRF-0970.  The Policy does not speak to what constitutes an "attempt to resolve," and Coleman, who bears the burden of proving non-exhaustion, did not meaningfully address Marsh's contention that he "orally" complained of his issues, which presumably included complaints about Coleman's refusal to provide the prescription, to the only "staff" available, Dr. Oliver. (*See* ECF No. 29-2, PageID.133 ("unless prevented by circumstances beyond his/her control . . .")). In any event, the Step III response itself merely states the grievance was rejected because "*a written attempt* to resolve this issue through a Health Care Request (CHJ-549)/Prisoner Kite for medical services was not found in the EMR" (ECF No. 29-1, PageID.115), but nowhere in ¶ Q of the Policy is there a requirement that a prisoner attempt to resolve issues in writing, so the MDOC's stated reason for this specific rejection appears to lack merit.

14

"ignores *Cook v. Caruso*, 531 F. App'x 554, 563 (6th Cir. 2013)," which, Coleman claims, stands for the proposition that "a grievance is not properly exhausted if MDOC rejects it ***at any step***." (ECF No. 34, PageID.171) (emphasis added). Coleman's reading of *Cook* is flawed.

The salient case law makes clear that a defendant waives his right to enforce an alleged procedural defect for purposes of exhaustion where a grievance was initially denied on the merits, but then rejected *for the first time* at a *later step* on a procedural defect. For example, on this very issue of whether a defendant could prove non-exhaustion by relying on a rejection of a grievance for the first time at Step III for failure to attempt to resolve the issue with staff, the court in *Raper v. Contronero*, 2018 WL 2928188 (W.D. Mich. 2018), aptly explained:

> The Defendants now object that the Report and Recommendation does not address *Cook v. Caruso*, an unpublished Sixth Circuit opinion. 531 Fed.Appx. 554, 563 (6th Cir. 2013).
>
> In *Cook*, the MDOC denied the plaintiff a bottom bunk even though he had a special medical accommodation as a precaution for his epilepsy. *Id.* at 556. He suffered a seizure, fell out of his top bunk, and injured himself. *Id.* He filed a grievance charging that he received inadequate medical care after his fall. One year later, he filed a second grievance raising the denial of a bottom bunk. *Id.* at 557. ***At each stage*** of the grievance process, MDOC officials ***rejected the second grievance as untimely***, but ***in steps II and III, they also recounted the basis*** for the prisoner's injury and noted the medical treatment he had received. *Id.* at 557-58. The district court granted the defendants' motion for summary judgment on the basis of exhaustion. *Id.* at 558. The prisoner then appealed, arguing that MDOC had waived his procedural defenses.
>
> The Sixth Circuit affirmed. The court distinguished *Reed-Bey* [*v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010)] by noting that although MDOC had reviewed the facts at each step, ***it had not actually decided on the merits, so that from Step I to Step III, MDOC had relied on***

15

*procedural defects to reject the grievance.* See *id.* at 563 ("Simply mentioning that the prison reviewed the record does not a merits-based response make."). The court clarified *Reed-Bey*, asserting that a merits-based determination must be made at *each* step of the grievance process for a prisoner to claim that the prison had waived a procedural defect. *Id.* at 563 ("For *Reed–Bey's* holding to apply, Cook would have had to receive merits-based responses at *each* step."). Thus, the Court affirmed the district court's grant of summary judgment on the basis of exhaustion.

Now, the Defendants assert that because Plaintiff did not receive a merits-based determination at Step III, he failed to exhaust his claims properly under *Cook*.

The Court does not agree. *The crucial difference between* **Cook** *and the instant case is that here, Defendants did not assert a procedural defect in either Steps I or II, and it went far beyond "review[ ] of the record" in those steps by denying the grievance on the merits. It raised Plaintiff's procedural defect—failing to attempt to resolve the issue before filing a grievance—only at Step III.*

The Court concludes that *where prison officials do not assert a procedural default at Steps I and II of the grievance process, instead addressing the claims on the merits,* **Cook** *is inapplicable*. *Reed–Bey* instructs that "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." 603 F.3d at 325.

Neither *Cook* nor *Reed–Bey* directly addresses situations in which MDOC officials assert a procedural defect for the first time late in the grievance process. The Court concludes that *when MDOC officials shift their rationale in denying a grievance from a purely merit-based determination to a procedural defect at the final step in the grievance process, the defect has been waived, thus exhausting the claim for purposes of federal suit*. *See, e.g.*, *Alexander v.* Huss, No. 2:16-cv-209, 2017 WL 4119944 (W.D. Mich. Sept. 18, 2017) (Maloney, J.) ("When the MDOC opts to ignore procedural violations, and instead addresses the merits of the claim or the appeal, it cannot later raise the procedural defect as a defense.") (citing *Reed–Bey*). Thus, *Defendants waived their right to enforce the procedural defect when it was not asserted in either the Step I or Step II response to Plaintiff's grievance. It would be vastly unfair to allow MDOC to shift to a purely procedural rationale to deny a grievance and thus deprive the grievant of access*

16

> ***to the courts under such a circumstance.***

*Raper*, 2018 WL 2928188, at *2-3 (emphasis added).

Eastern District of Michigan courts confronted with this particular issue have held the same. *See Sedore v. Greiner*, No. 19-10311, 2020 WL 8837441, at *7 (E.D. Mich. Sept. 21, 2020) ("The fact that the prison did not reject this grievance for a procedural error that existed, if at all, [] until the final step is troubling. . . . As a matter of policy, it would be unfair to allow prison officials to address the merits of a prisoner's grievance, but then reject the grievance for a procedural error that existed throughout the process at the final step, where the prison official has the last word. . . . Put another way, when MDOC officials shift their rationale in denying a grievance from a purely merit-based determination to a procedural defect at the final step in the grievance process, the defect has been waived, thus exhausting the claim for purposes of federal suit.") (quotation omitted); *see also Abbruzzino v. Hutchinson*, No. 08-CV-11534, 2009 WL 799245, at *5 (E.D. Mich. Mar. 24, 2009) ("Defendants cannot now rely on alleged procedural defects where Plaintiff's Step I and Step II grievances were addressed on the merits.").

Based on all of the above, because it is undisputed that SRF-0970 was denied solely on the merits at Steps I and II before it was rejected for the first time at Step III based on an alleged procedural defect, such defect has been waived. Accordingly, SRF-0970 was properly exhausted, and Coleman is not entitled to summary judgment on the basis of exhaustion as to claims raised in SRF-0970.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that defendant

Coleman's Motion for Summary Judgment on the Basis of Exhaustion **(ECF No. 29)** be **DENIED**.

Dated: October 31, 2022      s/David R. Grand
Ann Arbor, Michigan           DAVID R. GRAND
                              United States Magistrate Judge

### **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 1, 2022

                                          s/Michael E. Lang
                                          MICHAEL E. LANG
                                          Case Manager